IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, <br><br> Plaintiff, <br><br> vs. <br><br> MAX C. KANT, d/b/a MK Feedlots, d/b/a MK Purchase, et al., <br><br> Defendants. | No. C18-4100-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE** |

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 13) by defendants Orville Lage, Douglas Lage and Tessie Lage (collectively, the Lages) to dismiss for improper venue or, in the alternative, to transfer venue. Plaintiff Security National Bank of Sioux City, Iowa (SNB), has filed a resistance (Doc. No. 14) and the Lages have filed a reply (Doc. No. 17). The Lages have also filed a supplement (Doc. No. 18) to the motion to dismiss. I find that oral argument is not necessary. N.D. Iowa L.R. 7(c).

## II. PROCEDURAL HISTORY

SNB commenced this action on December 27, 2018, by filing a complaint (Doc. No. 1) against the Lages, along with Max C. Kant and Ann M. Kant, doing business as MK Feedlots and MK Purchase (collectively, the Kants), Justin Simon and Don Hearnen. The Lages filed their motion to dismiss or transfer venue on March 14, 2019. Simon and Hearnen filed an answer (Doc. No. 19) on April 12, 2019. The Kants, while being served on January 15, 2019, have not responded to the complaint.

## III. RELEVANT FACTS

This case arises from SNB's extension of credit to the Kants and Lages to purchase cattle, which were fed at a feedlot located in Battle Creek, Nebraska. SNB alleges that in September 2017, both the Kants and Lages defaulted on their loans. The cattle were sold to Cargill and the proceeds deposited into an account with SNB in Iowa. SNB alleges that pursuant to various security agreements, it has a perfected security interest in the proceeds. All of the defendants have also claimed interest in the cattle proceeds and other lawsuits have been filed concerning these competing claims. SNB now seeks a declaratory judgment as to the ownership rights and interests of the various parties to the cattle proceeds.

### A. *Relationship Between the Parties*

The Kants, residents of Norfolk, Nebraska, entered into an oral agreement with the Lages, residents of Pilger, Nebraska, in 1998, in which the Kants agreed to care for the Lages' cattle on their feedlot if the Lages reimbursed them. The Kants also agreed to oversee the sale of such cattle. Doc. No. 13-3 at 74. The Lages' cattle were purchased with funds loaned to them by SNB.[1]

SNB began funding the Kant's cattle feedlot business in the early 2000s. By March 1, 2013, SNB was supervising and effectively in control of the Kants' cattle feed business. As such, the Kants were required to submit all cattle sale proceeds received in the regular course of business to SNB. Pursuant to various Commercial and Agricultural Security Agreements, SNB alleges that it has a security interest in, among other things, the livestock at the Kants' feedlot, including cattle owned by others. Defendant Simon was the manager of M&S Livestock, LLC, and JS Enterprises, LLC. At some point after

---

[1] On June 28, 2016, the Lages entered into a Commercial Line of Credit Agreement and Note with SNB for the purpose of financing livestock and operating expenses. The listed security for the note included livestock. *See* Doc. No. 13-3 at 40–44.

March 1, 2013, those two companies also began using the Kants' cattle feed services. Defendant Hearnen also owned cattle that were kept and cared for at the Kants' feedlot. Both Simon and Hearnen are residents of South Dakota.

On September 18, 2017, SNB filed a replevin action against the Kants in Madison County, Nebraska, to obtain possession of the cattle due to the Kants' alleged default on their loan obligations to SNB. Doc. No. 13-3 at 21. During the course of that action, the cattle at issue were sold through several sales in Nebraska and the proceeds went to SNB.[2] *See id.* at 27, 30, 34–35. SNB dismissed the replevin suit against the Kants without prejudice on September 25, 2017. *Id.* at 37.

B. *Other Lawsuits*

On December 18, 2017, SNB filed an action for breach of contract against Orville Lage in the District Court of Stanton County, Nebraska, due to his alleged default. Doc. No. 13-3 at 40. Orville Lage then filed a third-party complaint against Max Kant and MK Feedlots, LLC, on March 6, 2018, alleging breach of contract and negligence for the Kants' failure to care for Lage's cattle and for losing or "otherwise illegally dispos[ing]" of the cattle. *Id.* at 74. Kant counterclaimed, alleging that Lage did not pay for the services Kant provided for his cattle. *Id.* at 85–90.

On December 22, 2017, SNB filed an action against Max Kant and Ann Kant, individually and doing business as MK Feedlots and MK Purchase, in the District Court of Madison County, Nebraska. Doc. No. 13-3 at 100–01. On February 1, 2018, SNB filed an amended complaint in that case, asserting claims for fraud and breach of contract and alleging that the Kants made false claims as to the amount of cattle in their inventory. Doc. No. 13-3 at 103–06. The District Court of Madison County, Nebraska, entered summary judgment in favor of SNB on December 18, 2018, on the breach of contract

---

[2] SNB was aware of the sales, but the Lages were not involved. After the sales occurred, the Lages claimed ownership of the cattle.

claim. *Id.* at 128–36. SNB then dismissed its fraud claim against the Kants without prejudice. *Id.* at 138.

On July 11, 2018, Hearnen and businesses managed by Simon filed a complaint against the Kants for breach of contract and fraud in the District Court for Madison County, Nebraska. Doc. No. 13-3 at 146. The plaintiffs in that case alleged that the Kants sold all the cattle at their feedlot, including cattle owned by Hearnen and the other plaintiffs, and that the Kants failed to provide them with the sale proceeds from their cattle. *Id.* at 147. The Kants counterclaimed on March 6, 2019, and alleged that after selling the cattle they remitted Hearnen's proceeds to SNB on his behalf. *Id.* at 155, 160.

On November 26, 2018, the Kants filed a complaint against SNB alleging, in essence, that the Kants paid excess money to SNB that should be returned. Doc. No. 13-3 at 162, 180–81. That case was removed to the United States District Court for the Northern District of Nebraska on December 11, 2018, by SNB. *Id.* at 278, 280.

## IV. ANALYSIS

### A. Motion to Dismiss for Improper Venue

#### 1. Applicable Standards

Federal Rule of Civil Procedure 12(b)(3) provides that a party may make a pre-answer motion to dismiss an action that is not filed in the proper venue. Rule 12(b)(3) allows dismissal "only when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.*

Venue is governed by 28 U.S.C. § 1391, which provides, in relevant part:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Const. Co.*, 134 S. Ct. at 577. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*

### *2.    Discussion*

Both parties focus their arguments on § 1391(b). The Lages argue that venue is improper because (1) a substantial part of the events or omissions giving rise to the claim occurred in Nebraska and (2) the property at issue is the cattle, which were also located in Nebraska, and the proceeds are not significant enough to establish proper venue. Doc. No. 13-1 at 7; Doc. No. 17 at 1, 3. SNB argues that venue is proper because the property at issue is the proceeds from the sale of the cattle, which is currently held by SNB in Sioux City, Iowa.³ Doc. No. 14 at 2.

The Lages rely on *Telford v. Dep't of Hous. and Urban Dev.*, No. 3:16-cv-03033-RAL, 2017 WL 1653305 (D.S.D. May 1, 2017), to argue that the proceeds are merely related to the case, not the true subject of the action. Doc. No. 17 at 3–4. *Telford* has a number of important distinguishing factors. For example, although the plaintiff in *Telford* was a resident of Wyoming, the defendants were residents of Wyoming and Nebraska,

---

³ SNB does not contest the Lages' assertion that a substantial part of the events giving rise to the claim occurred in Nebraska. *See* Doc. No. 14 at 1–2. Instead, SNB relies solely on the location of the property at issue to establish venue.

5

and all of the events giving rise to the complaint occurred in Wyoming, the plaintiffs brought the action in South Dakota.[4] *Telford*, 2017 WL 1653305 at *1–2. Here, plaintiffs are residents of Iowa and have brought their claim in Iowa. Additionally, in *Telford* the alleged connection to South Dakota was a vacant lot on which the plaintiff had recently placed a trailer. *Id*. at *4–*5. In this case, the parties do not dispute SNB's legitimate residency in Iowa or that the proceeds from the cattle sales are held in Iowa, but rather whether those proceeds are property at issue in this action

"[V]enue may be proper in any number of districts." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Venue may be proper in the district where a substantial part of the property subject to this action is situated. The Lages do not cite any case law supporting the assertion that the proceeds cannot be the property on which to determine venue. The question is whether the proceeds are truly the subject of the present action. SNB requests a declaratory judgment determining the ownership rights to the cattle proceeds so that SNB may apply a portion of the proceeds to the debts defendants owe. Doc. No. 1.

While cases addressing the property portion of §1391(b)(2) are scarce, courts that have addressed it have found that it applies to suits involving property disputes, not financial damages. *See Steen v. Murray*, 770 F.3d 698, 704 (8th Cir. 2014); *Cold Spring Harbor Lab. v. Ropes & Cray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011); *Bond Safeguard Ins. Co. v. Ward*, No. 1:09-CV-0093WSD, 2009 WL 1370935, at *5 (N.D. Ga. May 14, 2009); *Am. High-Income Tr. v. AlliedSignal Inc.*, No. CIV.A. 00-690 GMS, 2002 WL 373473, at *3 (D. Del. Mar. 7, 2002); *see also Envtl. Def. Fund, Inc. v. Corps of Eng'rs of U.S. Army*, 325 F. Supp. 728, 732 (E.D. Ark.), *supplemented*, 325

---

[4] The court in *Telford* noted that the plaintiff was restricted from bringing a pro se suit in Wyoming because she had a history of filing frivolous suits. *Telford*, 2017 WL 1653305 at *3. The court stated that this likely explained why the suit was brought in South Dakota. There is no similar situation here.

F. Supp. 749 (E.D. Ark. 1971) (finding property at issue did not establish venue because "[t]he action does not put in issue the title to, or possession of" any real property).

In a personal jurisdictional context, this court has previously stated that a declaratory judgment regarding the right to purchase property makes the property the subject matter of the litigation. *See United Fire & Cas. Co. v. Applied Fin., Inc.*, 397 F. Supp. 2d 1086, 1093 (N.D. Iowa 2005). I find that the proceeds held in Iowa constitute property that is the subject matter of this litigation. The cattle have been sold and the core question in this declaratory judgment action is the proper allocation of the proceeds. Because the proceeds are located in Sioux City, Iowa, I find that venue is proper in this district. The Lages' motion to dismiss for improper venue must be denied.

## B. *Transfer of Venue*

### 1. *Applicable Standards*

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The statute 'was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964) (in turn quoting Revisor's Note, H.R. Rep. No. 80–308, at A132 (1947), and H.R. Rep. No. 79–2646, at A127 (1946))). Courts must consider "three general categories of factors . . . when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, a court is not limited to those three categories and must engage in a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.*

"[F]ederal courts give considerable deference to a plaintiff's choice of forum." *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 540 (8th Cir. 2009) (quoting *Terra Int'l, Inc.*, 119 F.3d at 695). The party seeking transfer bears the burden of showing that the balance of factors "strongly" favors the movant. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 597 (8th Cir. 2011) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.")).

### 2.   *Discussion*

The Lages request that I transfer this case to the District of Nebraska. Doc. No. 13-1 at 2. SNB does not dispute that the District of Nebraska is a proper venue, only that it would be inappropriate to transfer the case. Doc. No. 14 at 3–7. Thus, I will address the three general categories of factors used to decide whether to transfer.

#### a.   *Convenience*

In balancing the convenience factors, the Court may consider:

(1) the convenience of the parties, (2) the convenience of the witnesses— including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l, Inc.*, 119 F.3d at 696. The party requesting transfer bears the burden of proving transfer is warranted. *Id*. at 695. The Lages contend that "the convenience factors overwhelmingly weigh in favor of" transfer, mainly because the defendants reside in either Nebraska or South Dakota. Doc. No. 13-1 at 13. The Lages also argue that the convenience factors weigh in favor of transfer because all the relevant actions were filed in Nebraska, not in Iowa, and the cattle and other collateral were located in Nebraska. *Id*. at 14–16. As such, the Lages contend that the documents and records regarding the issues in this case, as well as a majority of the witnesses, will be in

8

Nebraska. *Id.* at 16–17. Finally, the Lages argue that Nebraska is not inconvenient for SNB because SNB has already filed three lawsuits in Nebraska. *Id.* at 16.

SNB contends the Lages' arguments go more towards personal jurisdiction factors than convenience of venue factors and, in any event, are nothing more than conclusory statements. Doc. No. 14 at 3, 6. SNB argues that the federal courthouse in Sioux City, Iowa, is actually more convenient for the Nebraska residents because it is closer. *Id.* at 4. SNB provided driving distances from the parties' residences to the courthouse in Sioux City, Iowa, and the courthouse in Omaha, Nebraska, where trial would be held if the case was transferred. *See id.* at 4 n.1. Based on those calculations, the courthouse in Sioux City is the closer courthouse to all of the parties.[5]

As for witnesses, the question is whether the inconvenience will "inhibit the access of one party or the other to necessary witnesses." *Terra Int'l*, 922 F. Supp. at 1360. The Lages contend that the defendants' witnesses are likely in Nebraska due to the location of the feedlot and the residences of the parties. Doc. No. 13-1 at 17. They argue that non-party witnesses would also likely be located in Nebraska because of Cargill's location. However, the Lages have submitted nothing to identify those witnesses or show the quality or materiality of their testimony. *See Terra Int'l*, 922 F. Supp. at 1360; *see also Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *GreatAmerica Leasing Co. v. Avery Air Conditioning/Heating & A-Abaca Servs., Inc.*, No. 11-CV-66-LRR, 2012 WL 443586, at *8 (N.D. Iowa Feb. 10, 2012) (stating the parties should clearly specify "the key witnesses to be called and their location"). The Lages simply state that their own witnesses would likely be in Nebraska while SNB's witnesses would likely be in Iowa.

---

[5] SNB seems to imply that the Lages' convenience argument refers to the convenience of their counsel, rather than the parties themselves. *See* Doc. No. 14 at 4. While it is true the Lages' counsel is based in Omaha, Nebraska, the Lages' briefs only refer to the parties' residences. In any event, the convenience of a party's counsel is not a factor to be considered. *Lyngholm v. FedEx Ground Packaging Systs., Inc.*, 827 F. Supp. 2d 912, 920 – 21 (S.D. Iowa 2011).

A subpoena may command a person to attend a trial, hearing or deposition within 100 miles of where that person resides, is employed or regularly transacts business in person *or* where the person resides. Fed. R. Civ. P. 45(c)(1). According to SNB, the feedlot and the residences of the parties are located within 100 miles of the courthouse in Sioux City, Iowa. There is no indication that a venue in Iowa would prohibit the parties from accessing necessary witnesses. The same can be said for records and documents. The Lages argue that while some documents are located in Iowa, others are located in Nebraska. Doc. No. 13-1 at 16–17. However, the Lages have presented no evidence that they could not access those documents or have them available for trial in Iowa.

The Lages also state that Nebraska is the location where a majority of the relevant events occurred, including the various lawsuits discussed above. Doc. No. 13-1 at 14. SNB does not dispute this assertion and argues only that it goes more towards personal jurisdiction than venue. Doc. No. 14 at 3. However, the location of relevant events is clearly a factor to consider as part of the "convenience" analysis. Nonetheless, I conclude that the Lages have not met their burden of proving that the convenience factor weighs in favor of transfer.[6]

### b. *Interests of justice*

Relevant factors affecting the "interests of justice" include:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgement, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

---

[6] Neither party addressed the final factor; the applicability of each forum state's law. Under the Restatement, in an action for breach of contract, the court must apply "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflicts of Laws, § 188(1). Whether Iowa or Nebraska law would ultimately apply, there is no reason this court could not apply either state's laws. As such, this factor does not change the analysis of the convenience factor.

*Terra Int'l, Inc.*, 119 F.3d at 696. Of these factors, the Lages focus on the second: plaintiff's choice of forum.

Normally, as noted previously, "federal courts give considerable deference to a plaintiff's choice of forum," especially when the plaintiff is a resident of the judicial district in which the complaint is brought. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 540 (8th Cir. 2009) (quoting *Terra Int'l, Inc.*, 119 F.3d at 695); *Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 568 (N.D. Iowa 1994). Here, however, the Lages argue that SNB's choice should be given little weight because (1) SNB has already filed three lawsuits in Nebraska, (2) it would not be costly for SNB to try this case in Nebraska but it would be costly for the defendants to try the case in Iowa and (3) because this case is not a traditional lawsuit, but instead seeks a declaratory judgment, it should be treated like an interpleader action. Doc. No. 13-1 at 17–18; Doc. No. 17 at 4.

The Lages rely on *Blackmon Auctions, Inc. v. Van Buren Truck Ctr., Inc.*, 901 F. Supp. 287, 290 (W.D. Ark. 1995), to argue that declaratory judgments and interpleader actions are merely procedural, and therefore the plaintiff's choice of forum should not hold much weight. Doc. No. 17 at 4. However, *Blackmon* states that declaratory judgments and interpleader actions use the same analysis for determining whether federal question jurisdiction exists. *Blackmon*, 901 F. Supp. at 289–90. Jurisdiction is not at issue here, venue is.

The Lages also cite *In re Trusts Established under the Pooling & Serv. Agreements*, 241 F. Supp. 3d 905, 931 (D. Minn. 2017), to support the argument that the plaintiff's choice of forum should receive less weigh in interpleader and other, similar actions. Doc. No. 17 at 4. In that case, the court stated that "where the plaintiff has no underlying interest in where the case is litigated, as in an interpleader action, courts need not defer to the plaintiff's choice of venue," particularly when none of the underlying events occurred in the chosen forum. *In re Trusts*, 241 F. Supp. 3d at 931–32. The court emphasized that (1) the trustee "has specifically disavowed any opposition to transferring" the case and (2) numerous pertinent underlying facts took place in a

11

different forum. *Id.* at 931. Therefore, the court could give less deference to the chosen forum. *Id.* at 931.

Here, SNB clearly has an interest in determining the parties' respective interests in the cattle proceeds. Further differentiating this case is the fact that SNB opposes the Lages' motion to transfer. Also, the forum chosen by the plaintiff in *In re Trusts* had an incidental connection to the proceedings, while this forum is SNB's principal place of business and the district in which the disputed property is located. Thus, I will not give less than the usual deference to SNB's choice of forum. This factor does not weigh in favor of transfer.

As for the remaining six factors, the Lages state, without supporting evidence,[7] that it would be too costly for them and the other defendants to attend trial in Iowa, particularly while defending other related lawsuits in Nebraska. Doc. No. 13-1 at 18. Regardless of the venue of this action, the defendants will have to defend multiple actions in either Iowa or Nebraska and there is no evidence that one or the other will be more costly. Defendants have not proved that the cost of defending this action in Iowa will differ, to any significant extent, from the cost of defending it in Nebraska.

Ultimately, the party seeking transfer bears the burden of showing that the balance of factors "strongly" favors the movant. *K-V Pharm. Co.*, 648 F.3d at 597. The Lages have not come close to meeting this burden. Their motion to transfer venue must be denied.

---

[7] The Lages cite to nearly 300 pages of court documents from the pending Nebraska actions with no explanation of how these documents show the costs defendants may incur from having to defend an action in Iowa. Doc. No. 13-3 at 21–145, 162–311.

## V. CONCLUSION

For the reasons set forth herein, the Lages' motion (Doc. No 13) to dismiss for improper venue or, in the alternative, to transfer venue, is **denied**.

**IT IS SO ORDERED.**

**DATED** this 17th day of July, 2019.

_____
Leonard T. Strand, Chief Judge